FILED

2021 May-18  PM 02:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| HUNTER REED MURPHY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 7:20-cv-530-GMB |
| | ) | |
| ANDREW M. SAUL, Commissioner, | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

On May 11, 2017, Plaintiff Hunter Reed Murphy filed an application for a period of disability and disability insurance benefits ("DIB"). His alleged disability onset date is January 8, 2015. Murphy's application for benefits was denied at the initial administrative level. He then requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ held a hearing on November 27, 2018 and denied Murphy's claims on May 1, 2019. Murphy requested a review of the ALJ's decision by the Appeals Council, which declined review on March 4, 2020. As a result, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration (the "Commissioner") as of March 4, 2020.

Murphy's case is now before the court for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Under 28 U.S.C. § 636(c)(1) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the full jurisdiction of a

United States Magistrate Judge. Doc. 12. Based on a review of the parties' submissions, the relevant law, and the record as a whole, the court concludes that the decision of the Commissioner is due to be affirmed.

## I. STANDARD OF REVIEW[1]

The court reviews a Social Security appeal to determine whether Commissioner's decision "is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). The court "may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner," but rather "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (citation and internal quotation marks omitted). "Even if the evidence preponderates against the Secretary's factual findings, [the court] must affirm if the decision reached is supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Moreover, reversal is not

---

[1] In general, the legal standards are the same whether a claimant seeks DIB or Supplemental Security Income ("SSI"). However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to reference the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in excerpted court decisions.

warranted even if the court itself would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

The substantial evidence standard is met "if a reasonable person would accept the evidence in the record as adequate to support the challenged conclusion." *Holladay v. Bowen*, 848 F.2d 1206, 1208 (11th Cir. 1988) (quoting *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983)). The requisite evidentiary showing has been described as "more than a scintilla, but less than a preponderance." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The court must scrutinize the entire record to determine the reasonableness of the decision reached and cannot "act as [an] automaton[] in reviewing the [Commissioner's] decision." *Hale v. Bowen*, 831 F.2d 1007, 1010 (11th Cir. 1987). Thus, the court must consider evidence both favorable and unfavorable to the Commissioner's decision. *Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990).

The court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Grant v. Astrue*, 255 F. App'x 374, 375–76 (11th Cir. 2007) (citing *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*

## II. STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 416(i). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Plaintiff bears the burden of proving that he is disabled and is responsible for producing evidence sufficient to support his claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

A determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a). The Commissioner must determine in sequence:

(1) Is the claimant presently unable to engage in substantial gainful activity?
(2) Are the claimant's impairments severe?
(3) Do the claimant's impairments satisfy or medically equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
(4) Is the claimant unable to perform her former occupation?
(5) Is the claimant unable to perform other work given her residual functional capacity, age, education, and work experience?

*See Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015).

"An affirmative answer to any of the above questions leads either to the next question, or, [at] steps three and five, to a finding of disability.  A negative answer to any question, other than at step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (quoting 20 C.F.R. § 416.920(a)−(f)).  "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516 (11th Cir. 1985)).

## III.  RELEVANT FACTUAL BACKGROUND

Murphy was born in 1980 and was 34 years old at his alleged onset date and 38 years old at the date of the decision. R. 20, 187.  His primary complaints are chronic pain in his back and neck. R. 39–48.  In his disability report, Murphy alleged the following medical conditions: neck problems, disc in vertebrae, back nerve problems, and arthritis. R. 186.

Murphy completed high school and has past work experience as a deck hand, plumber helper, industrial groundskeeper, and pipeline laborer. R. 20, 44, 203–10. At the hearing, Murphy testified that in the morning it takes him approximately two hours "to get to where [he] can function . . . [a]nd then throughout the day it's a variation of making—just even small things [he] can't do for long periods of time." R. 40.  He testified that his pain restricts him to sitting for only 30 minutes, standing

for 15 to 20 minutes on concrete and 40 minutes on dirt, and walking approximately one block. R. 46–48, 59–60.  He has to lay down on his back for about two hours each day to relieve his back and neck pain. R. 39, 48, 64.  When the pain is at its worst, Murphy rates it as a 10 out of 10 on the pain scale. R. 62.

The ALJ issued her decision on May 1, 2019. R. 21.  Under step one of the five-step evaluation process, she found that Murphy has not engaged in substantial gainful activity since January 8, 2015. R. 14.  The ALJ concluded that Murphy suffers from the severe impairments of degenerative disc disease of the cervical and lumbar spine, status-post cervical fusion.[2] R. 14–15.  The ALJ noted that these medically determinable impairments cause more than minimal limitations to Murphy's ability to perform basis work activities. R. 14.  But the ALJ concluded at step three of the analysis that none of Murphy's impairments satisfied or medically equaled the severity of one of those listed in the applicable regulations. R. 15.

Before proceeding to the fourth step, the ALJ determined that Murphy had the residual functional capacity ("RFC") to perform a limited range of light work. R. 15.  More specifically, the ALJ found that Murphy had the following limitations with respect to light work, as defined in 20 C.F.R. § 404.1567(b):

> He can stand and walk for four hours in an eight-hour workday except
> he must be able to alternative between sitting and standing at thirty

---

[2] The ALJ found Murphy's other alleged impairment, bilateral carpal tunnel syndrome, to be non-severe. R. 14–15.  Murphy does not challenge this finding.

minute intervals.  He can occasionally push and pull to operate foot controls with the bilateral lower extremities.  He can never climb ladders, ropes, and scaffold and occasionally climb ramps and stairs. He is able to occasionally stoop, kneel, crouch, and crawl.  He can occasionally reach overhead with the bilateral upper extremities.  He must avoid concentrated exposure to extreme heat, extreme cold, wetness, humidity, vibration, and workplace hazards such as heavy machinery and unprotected heights.

R. 15.  At the fourth step, the ALJ considered Murphy's age, education, work experience, and RFC in determining that he was not capable of performing his past relevant work. R. 20  However, the ALJ determined that considering Murphy's age, education, work experience and RFC, there were other jobs existing in significant numbers in the national economy that Murphy could perform, including employment as an office helper, information clerk, and casher II. R. 20–21.  Therefore, the ALJ concluded that Murphy was not disabled within the meaning of the Social Security Act from January 8, 2015 through the date of the decision. R. 21.  Based on these findings, the ALJ denied Murphy's application. R. 21.

## IV.  DISCUSSION

Murphy makes one argument in favor of remand: that the ALJ did not properly evaluate the credibility of his subjective complaints of pain relating to his neck and back. Doc. 15 at 6–9.  The Commissioner contends that substantial evidence supports the ALJ's subjective complaint analysis. Doc. 16 at 5–11.  For the following reasons, the court finds that substantial evidence does support the ALJ's determination and that the ALJ applied the proper standards to reach her

conclusions.

In addressing a claimant's subjective description of pain and symptoms, the

law is clear:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.  If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citations omitted); *see also* 20 C.F.R. §§ 404.1529.  If a claimant satisfies the first part of the test, the ALJ must evaluate the symptoms' intensity, persistence, and effect on the claimant's ability to work. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1529(c) & (d); 20 C.F.R. §§ 416.929(c) & (d).   While evaluating the evidence, the ALJ must consider whether inconsistencies exist within the evidence or between the claimant's statements and the evidence, including his history, medical signs and laboratory findings, and statements by medical sources or other sources about how his symptoms affect him. 20 C.F.R. §§ 404.1529(c)(4) & 416.929(c)(4).  In determining whether substantial evidence supports an ALJ's credibility determination, "[t]he question is not . . . whether the ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec*., 421 F. App'x 935, 939 (11th Cir. 2011).  The ALJ is not required to

conduct an explicit symptom analysis, but the reasons for her findings must be clear enough that they are obvious to a reviewing court. *See Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Id.* (citation omitted).

The ALJ found that Murphy's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but his statements regarding the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. R. 16. This determination is supported by substantial evidence.

The ALJ thoroughly examined the medical evidence in determining that Murphy's subjective complaints of pain were not entirely credible. R. 16–20. The ALJ specifically found that his complaints of disabling pain were inconsistent with the following medical evidence:

- After Murphy's March 2015 anterior cervical discectomy and fusion with internal fixation at C5-C6 and C6–C7, his follow-up appointment in April 2015 noted he was "doing extremely well" and he had full strength and symmetrical reflexes bilaterally. R. 279.
- July 2015 follow-up appointment where Murphy reported an improvement in headaches and arm pain, but some mechanical neck pain. X-rays showed "a nice solid arthrodesis at C5–6 and C6–7," and Murphy was released to return to work with a 25-pound lifting restriction. R. 271–72, 295.
- June 2016 imaging of Murphy's cervical spine was normal. R. 267.
- August 2016 "unremarkable" MRI demonstrated perfect positioning of plate and screws with no evidence of screw fracture, but it did not appear that there was solid bone through his spaces. R. 261. The doctor opined that there could

be some pseudoarthrosis and decided to have a CT scan performed. R. 261.

- September 2016 CT scans of the cervical spine "demonstrate[d] a very thin lucency through his grafts at both levels.  There is no haloing around the screws. All-in-all this looks very stable." R. 258.  The doctor noted no reason to intervene surgically. R. 258.
- February 2017 treatment notes from UAB note relatively normal examinations including normal and symmetrical sensory examinations, negative straight leg raise tests, full strength, and negative Tinel's tests. R. 311–12.  The doctor opined that Murphy's "neck discomfort is primarily muscle related." R. 312.
- Normal lumbar spine x-ray series in August 2017. R. 444, 447.

The ALJ also considered Murphy's course of treatment in finding that Murphy's complaints were not entirely credible. R. 16–19.  The ALJ explained that the medical records reflect that Murphy's impairments have been controlled with routine non-narcotic medication management and do not support the extreme loss of functioning Murphy claims. R. 19.  For example, Murphy went to physical therapy from February to May 2017 (R. 320–23, 405–37), and the physical therapist noted fair progress towards his goals even though Murphy reported that he felt about the same at the end of his session. R. 405.  Additionally, in January 2018, Murphy refused a prescription for an opiate pain reliever from the Birmingham Pain Center and said he was doing well with Naproxen and Robaxin. R. 469.  And in July 2018, Murphy stated that his last lumbar radio frequency ablation worked well, and he had greater than 50% relief during the last four months. R. 586.

On this record, the court finds that the ALJ's conclusion about Murphy's subjective complaints of neck and back pain is supported by substantial evidence.

Despite his subjective complaints, Murphy's medical examinations largely were normal with few abnormalities, and there was ample evidence of improvement with non-narcotic medication and treatment. *See Belle v. Barnhart*, 196 F. App'x 558, 560 (11th Cir. 2005) (noting that normal findings on examination support an ALJ's decision to discount subjective complaints); *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) ("A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling."). Murphy's doctors chose conservative treatment and medication and this regimen was effective. *Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996) (finding substantial evidence to discredit the claimant's testimony regarding pain where his course of treatment was conservative). Additionally, the record reflects that Murphy engaged in a somewhat normal level of daily activity, including caring for his personal needs, preparing quick meals, washing dishes, occasionally mowing the lawn, driving, handling financial matters, and serving as his three-year old daughter's primary caregiver during the workweek. R. 16, 195–99. His ability to accomplish these activities further undermines his claim of disabling limitations. *See Meehan v. Comm'r of Soc. Sec.*, 776 F. App'x 599, 603 (11th Cir. 2019) (holding ALJ properly found subjective complaint inconsistent with a record of simple daily activities).

In support of his complaints, Murphy highlights two consultative examinations. Doc. 15 at 3–5, 8. While this evidence may provide some support for

his subjective complaints of pain, the ALJ is not required to give consultative opinions any particular deference. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004). More importantly, the court may not "re-weigh the evidence or substitute[e] [its] judgment for that [of the Commissioner] . . . even if the evidence preponderated against the decision." *Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) (citation and internal quotation marks omitted). Instead, the court must determine whether substantial evidence supports the ALJ's credibility assessment of Murphy's subjective complaints of pain—"not . . . whether [the] ALJ could have reasonably credited [Murphy's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. app'x 935, 939 (11th Cir. 2011). The court cannot conclude that the ALJ was clearly wrong to discredit Murphy's complaints.

In sum, the ALJ correctly considered "the consistency of [Murphy's] statements" with the remainder of the evidence. *See* SSR 16-3p, 2017 WL 5180304, at *8. The ALJ's determinations are supported by substantial evidence and Murphy's claim is without merit.

## V. CONCLUSION

For these reasons, the Commissioner's decision is supported by substantial evidence and based upon the proper legal standards. Accordingly, the decision of the Commissioner is due to be affirmed. A final judgment will be entered separately.

DONE and ORDERED on May 18, 2021.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE